JOYCE, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, March 21, 1905.

1. PRACTICE: Impeaching One's Own Witness. A party who puts a witness on the stand is not allowed to impeach the witness's reputation for truth nor to prove statements made by him inconsistent with his testimony.

2. ———: ———: Contradicting Testimony. But a party is not bound by the testimony of one of his witnesses and may prove by other evidence facts inconsistent with such testimony, even if such evidence tends to show the witness committed perjury.

3. ———: ———: Instruction. Where the testimony of one of plaintiff's witnesses was in conflict with that of other witnesses, an instruction that the plaintiff "vouches for the credibility of his witnesses and can not be heard to impeach their truth, or to question the veracity of any one of them," was improper and misleading because it did not define what was meant by impeaching the testimony of a witness.

4. STREET RAILWAYS: Contributory Negligence: Testimony. In an action against a street railway company for injuries received by a collision of a car of defendant with a buggy in which the plaintiff was riding with another, the evidence is examined and held a question as to whether plaintiff was guilty of contributory negligence or affected by the negligence of the driver, was properly submitted to the jury.

Appeal from St. Louis City Circuit Court.—*Hon.
O'Neill Ryan,* Judge.

Verdict was for the defendant and the appeal is
from an order of the court sustaining plaintiff's motion
for new trial.

AFFIRMED AND REMANDED.

*Boyle, Priest & Lehmann, Geo. W. Easley* and *Geo.
T. Priest* for appellant.

If the undisputed facts show that the injured party
was guilty of such contributory negligence as will pre-
clude a recovery, and if there is no evidence of a willful,
reckless or wanton disregard of human life, on the part
of the operatives of the train, there is nothing for a jury
to pass upon, and the court should sustain a demurrer
to the evidence. Moore v. Railway, 176 Mo. 545, 75 S.
W. 672; Tanner v. Railroad, 161 Mo. 497, 61 S. W. 826;
Kelley v. Railroad, 101 Mo. 67, 13 S. W. 806; Holwerson
v. Railroad, 157 Mo. 216, 57 S. W. 770; Van Bach v.
Railroad, 171 Mo. 338, 71 S. W. 358; Guyer v. Railroad,
174 Mo. 344, 73 S. W. 584.

*Johnson, Houts, Marlatt & Hawes* for respondent.

1. It was error to instruct the jury that plaintiff
could not be heard to impeach the testimony or to ques-
tion the veracity of any witness offered by him. Grocer
Co. v. Frick, 73 Mo. App. 128; Greenwood on Evidence
(16 Ed.), secs. 442-443-b.; Imhoff v. McArthur, 146 Mo.
377, 48 S. W. 456; Creighton v. Modern Woodmen, 90
Mo. App. 384; Campbell v. McGaskill, 88 Mo. App. 48;
Brown v. Wood, 19 Mo. 475; Drug Co. v. McMahan, 50
Mo. App. 23. 2. Contradictory testimony is impeach-
ing in its nature. Greenleaf on Evidence (16 Ed.), pp.
563-4; II. Wigmore on Evidence, par. 908.

GOODE, J.—This is an appeal from an order of the court below sustaining a motion of the plaintiff for a new trial after a verdict had been returned against him. The action was for personal injuries received by the plaintiff in an accident on Franklin avenue in the city of St, Louis, March 15, 1903. Joyce and Edward J. Kaiser had been driving about the city in a horse and buggy that day, and about seven o'clock in the evening were traveling eastward on the north side of Franklin avenue. They started to drive diagonally over the street railway tracks of the defendant company, but the wheels of the buggy caught or locked in the tracks, rendering it impossible for a few minutes to drive off. Kaiser was driving. While the buggy was fastened in the tracks with the horse on the south side and Kaiser urging him forward, a trolley car of the defendant approached from the east at a rapid speed and crashed into the buggy, injuring the plaintiff. The negligence charged is that the motorman was running the car a high and excessive speed; that he failed to ring the bell to warn the plaintiff of the approach of the car and failed to stop the car in the shortest time and space possible after discovering the dangerous position of the buggy and its occupants. During the trial the plaintiff introduced the motorman himself as a witness and said witness testified to a state of facts directly contrary to what had been testified to by the other witnesses. The motorman swore that instead of the occupants of the buggy striving to drive across the tracks diagonally they were driving along the track toward the car and drove into it. He said he endeavored to stop the car but the horse and buggy were driven into it; that the occupants of the buggy acted as though they were drunk. All said testimony was in conflict with that given by the other witnesses.

In instructing the jury the court, among other instructions, gave this one:

"The court instructs you that the plaintiff vouches for the credibility of his witnesses and cannot be heard

to impeach their testimony, or to question the veracity of any one of them.''

The order setting aside the verdict and granting a new trial assigns as the ground of the ruling that the judge of the court below, upon reflection, deemed the instruction above quoted to be erroneous. We think it was apt to mislead the jury. A party who puts a witness on the stand is not allowed to impeach the witness' reputation for truth, nor to prove statements made by him inconsistent with his testimony. In the present case the plaintiff made no attempt to impeach the motorman, or any other witness in that way. But a party is not bound by the testimony of one of his witnesses, and may discredit it to the extent of introducing contradictory evidence, other than inconsistent statements of the witness himself, and asserting that the contradictory evidence is true and the testimony of the witness untrue. The instruction in question said the plaintiff could not impeach the testimony of his witnesses. Strictly speaking and using the word ''impeach'' in a technical sense, the instruction may be regarded as good law. But without further advice to the jury as to what was meant by impeaching the testimony of a witness, it was likely to be understood as precluding the plaintiff from disputing the truth of the testimony of any witness introduced by him. The tendency of the instruction to mislead a mind not trained in legal phraseology, is apparent from the two propositions declared in it: that the plaintiff could not be heard to impeach the testimony of his witnesses or question the veracity of any one of them. The instruction did not simply deny plaintiff's right to attack the credibility of his witnesses, but might have been understood to deny his right to attack the truthfulness of the testimony given by any of them. This is not the law. Meyer Bros. v. McMahon, 50 Mo. App. 18; Greenleaf, Evidence (16 Ed.) secs. 442, 443b. The party who puts a witness on the stand may prove, by other evidence, facts inconsistent with the witness's

statement, even if the inconsistent evidence tends to show the witness committed perjury. Brown v. Wood, 19 Mo. 475.

It is contended that on the entire evidence the plaintiff should have been nonsuited for the reason that Kaiser, who was driving, drove on the track when the car was only twenty or thirty feet in front of them and in plain view. All the evidence does not support this position. One witness testified that when Kaiser started to drive across the track, the buggy was five times as far from the car as the distance across the court room where the case was tried. The width of the court room was not proved, but was said on the argument to be about thirty feet. According to the testimony, therefore, the car was one hundred and fifty feet away when the plaintiff started across the track; and, of course, it was not careless to endeavor to cross under those circumstances, that is, not so conclusively careless that a court can say it proved contributory negligence. Besides, the question must be determined from the facts as to whether Joyce was negligent or was affected by any negligence of which Kaiser may have been guilty.

It is said to be obvious that if the occupants of the buggy had been diligent about passing over the track, they would have gotten across before the car reached them. This argument is not necessarily inconsistent with the previous contention that the car was too close. One hypothesis rests on the assumption that there was evidence to show the car was very near the buggy when its occupants started across and the other that there was evidence to show the car was distant. The evidence tends to prove—indeed is almost decisive—that the buggy would have crossed the track in safety had it not been impeded by its wheels locking in the rails. If the motorman saw the buggy in that position, as the evidence tended to show he must, he should have endeavored to stop the car. There is testimony that he made no effort to do so.

· The order granting a new trial is affirmed and the cause remanded. All concur.